THE PEOPLE EX REL. CHAUNCEY P. WILLIAMS AND OTHERS *v.* THE BOARD OF ASSESSORS OF THE CITY OF ALBANY.

*Bank stock — assessment of — value — how determined — Writ of certiorari — when quashed.*

Under chapter 761, Laws of 1866, providing for the assessment of the stock of State and national banks, the shares should be assessed at their true value, and not at their par value.

All bank stock in the city of Albany, provided the same is not below par, is assessed at its par value. The relator is a stockholder in the National Albany Exchange Bank, the stock of which is above par. A share of stock in the said bank is worth only about forty-one per cent of the actual value of a share of stock in the Mechanics and Farmers' Bank, which is situated in the same city and ward. The shares of each bank are assessed at their par value. The relator applied to have the assessment corrected. *Held*, that, though the relator's

assessment would be increased by assessing his stock at its actual value, yet he was injured by the rule adopted by the assessors, as it relieved from taxation a large amount of property owned by the Mechanics and Farmers' Bank, and thereby increased the rate to be imposed upon all the taxable property included in the assessment roll.

The relator asked to have his assessment reduced to correspond with the assessment of the shares of the Mechanics and Farmers' Bank, or that a reassessment on the shares of both banks, based upon their actual value, be ordered. *Held,* (1), that [as it did not appear that all other bank stock in the ward was worth as much as that of the Mechanics and Farmers' Bank, the relator was not entitled to have his assessment reduced to the same proportionate valuation.   (2.) That if a reassessment were ordered, it should include all the bank stock worth more than par, in the ward if not in the city, and as none of the assessments against shareholders could then be increased, such reassessment was impossible.

The writ of certiorari issues only in the sound discretion of the court, upon special cause shown, and when issued will be superseded if the remedy sought be inconsistent with the interests of public justice and convenience.

CERTIORARI to review the assessment of the relators, as stockholders in the National Albany Exchange Bank.

This case comes before the court upon the return of the defendants to a writ of *certiorari,* issued pursuant to an order of the Special Term, and upon a motion of the defendants to quash or supersede the writ.

The following facts appear from the return and the exhibits thereto annexed.   The relators are stockholders of the National Albany Exchange Bank, a banking association organized under the national banking act, and located in the sixth ward of the city of Albany. The official report of its officers, dated July 7, 1874, shows its capital to be $300,000; surplus $100,000; other undivided profits $56,275.14; total, $456,275.14, with no deduction for July dividend. There is located in the same ward several other banks, including the Mechanics and Farmers' Bank, which is organized under the laws of this State.   The official report of the officers of the latter bank, dated July 1, 1874, shows its capital to be $350,000; surplus $650,000; profits, less July dividend, $106,839.15; profits, less real estate account, $77,000; total, $1,183,839.15.   The board adopted as the standard of valuation in the assessment of all bank stock in the city, the par value thereof, whenever they were satisfied that it was worth par or any greater sum, and did not make any inquiries or investigation as to the actual value of the stock,

further than to ascertain that such value was more than the par value. The shares of the banks in question were accordingly assessed at their par value, deducting the assessed value of their real estate. The relator, Williams, appeared before the board at the proper time after the assessments were made, and demanded that the assessment of the shares of the Exchange Bank be reduced to forty-one per cent of the shares of the Mechanics and Farmers' Bank, which reduction the board refused to make. The assessment roll is still in the hands of the board, and the relators ask to have their assessments reduced as claimed before the assessors.

*Matthew Hale,* for the relators.

*R. W. Peckham,* for the defendants.

BOCKES, J. :

This case is before the court, on the return to a writ of certiorari, having for its object the correction of assessments, made by the board of assessors of the city of Albany, against the shareholders of stock of the National Exchange Bank of that city. The relators demand by way of relief, a reduction of the assessments against them on their shares of stock, either by the direct order of the court, or by a reversal of the proceedings of the board as to them, with directions which would secure that result. There is also a motion on the part of the defendants to quash the suit.

The case has given us great anxiety in its consideration, surrounded as it is with perplexing questions, affecting both public and private interests. It is, as we think, entirely plain that the basis of assessment against the owner of shares of stock of the banks, as certified to us by the board of assessors in answer to the writ in this case, is erroneous. The assessments have not been made against the shareholders " on the *value* of their shares of stock," as the law requires,* but were made, as the fact is certified in the return, at par value, without regard to the true value, in excess of par. Such basis of assessment was in manifest disregard of the plain directions of the statute. This seemed so utterly indefensible, that, on our first consideration of the case, we con-

* Laws of 1866, chap. 761.

cluded to reverse the proceedings of the board of assessors, and to direct a reassessment. But on further examination and reflection, we find that this disposition of the case would be attended with serious difficulties. Such revision of the roll, if ordered in this proceeding, could be but partial; nor would it at all correct the error we deem so palpable.

The only alteration which could be made on this proceeding, would be by way of reduction of the assessment of the shares held by the relators, the shareholders in the Exchange Bank. This only they demand. They ask for a reduction of the assessed value of their shares of stock, which are already assessed too low; and, as has been already suggested, a reassessment of all the property on the roll, with a view to secure entire fairness and equality of taxation as regards all the tax-payers, is, at this late day impracticable. The complaint here is not that the relators are assessed too high, but that some other parties on the roll (the shareholders in the Mechanics and Farmers' Bank) are assessed too low. Yet it is not claimed that the assessment against the latter can now be raised. To reduce the assessment against the relators, might produce equality as between them and the shareholders in the Mechanics and Farmers' Bank; but it would also produce inequality, as between them and all others on the roll, who must be presumed to be represented fairly thereon. The rights of all the tax-payers on the roll should be considered, and no order or direction should be here given, which would work general inequality and injustice.

We are unwilling to give even apparent sanction to the action of the board of assessors, as certified to us in the return. The statute, under which such action was taken, was not duly observed. But to grant the relators the relief demanded by them, either by here reducing the assessments against them, or by directing a reduction by the board of assessors, would but give sanction to the error already perpetrated, and enhance its enormity. We are therefore led to the conclusion, contrary to our first impressions, that the true course to be adopted by us, is to quash the writ.

For a more careful and extended consideration of the case, recourse must be had to the accompanying opinion of Mr. Justice COUNTRYMAN, wherein the subject is clearly and logically discussed in the light of former legislation, and the decisions bearing upon it.

COUNTRYMAN, J. :

It is an undisputed fact appearing in the return, that the board of assessors, in the assessment of all bank stock in the city of Albany, adopted as their standard of valuation the par value of the shares whenever the actual or market value was equal to or exceeded the par value, and regardless of the actual value whenever it exceeded par. This was a palpable violation of the laws of this State, requiring and regulating the assessment of property for the purpose of taxation. The Revised Statutes require that " all real and personal estate liable to taxation, shall be estimated and assessed by the assessors at its *full and true value*, as they would appraise the same in payment of a just debt due from a solvent debtor."\* And to secure a strict performance of this duty, the assessors are also required by a subsequent enactment, for a willful violation of which they incur the penalties of perjury, to make oath that the " assessment roll contains a true statement of   \*   \*   \*   the taxable personal estate of each and every person   \*   \*   \*   at the *full and true value* thereof, according to their best judgment and belief."† The rule had been uniform, for many years prior to the organization of national banking associations, under the acts of congress,‡ to assess the capital stock of all the banks against the corporations themselves, in the same manner and at the same valuation as other personal property against private individuals. §

But after the enactment of the federal law, and the organization of national banks, it became necessary, to obviate the difficulties caused by the subsequent decisions of the Supreme Court of the United States, ‖ to make the assessment upon the stock of these associations against the individual shareholders, and to adopt a rule for the assessment of this species of property, which should be applicable alike to all the banks, whether organized under the laws of the State or of the United States. The act of 1866 ¶ was passed for this purpose, and rendered the shares of stock in the national

---

\* 1 R. S., 393, § 17.     † Laws of 1851, chap. 176, § 8; 3 Statutes at Large, 350, § 8.
‡ 12 U. S. Statutes at Large, 665; 13 id., 99.
§ Laws of 1853, 1241, § 10 ; Laws of 1857, chap. 456, § 3.
‖ Bank Tax Case, 2 Wall., 200; Van Allen v. The Assessors, 3 id., 573.
¶ Laws of 1866, chap. 761, p. 1647.

banks equally "liable to taxation" with the shares in the State banks. The act provides that the shareholders in all of these corporations, State and national, "shall be assessed and taxed on the *value* of their shares of stock," which "shall be included in the valuation of the personal property of such stockholder in the assessment of taxes  *   *   *   but not at a greater rate than is assessed upon other moneyed capital in the hands of individuals in this State." The mode of ascertaining the value of the stock is not prescribed in the act, as this had been previously done in the Revised Statutes, accompanied with an express declaration that the same method "shall be followed in all assesssments, except where the assessors shall be specially required by law to observe a different rule." * The purpose of the act was three-fold : 1. To make the stock in the national banks "liable to taxation" under the laws of the State. 2. To provide "that the tax so imposed  *   *   *   shall not exceed the rate" imposed upon the shares of the State banks, as required by the act of congress. 3. To prevent an assessment "at a greater rate than is· assessed upon other moneyed capital in the hands of individual citizens," in compliance also with the federal law. The adoption by the legislature of these additional limitations in the act of 1866, is therefore no indication of an intention to change the rule enjoined in the Revised Statutes for ascertaining the value of this kind of property, or of prescribing a different value, for any of the purposes of assessment and taxation. These provisions were necessary in compliance with the conditions imposed in the act of congress, which only permitted the State authorities upon these terms, to levy a tax on the shares of stock in the national banks. † The conclusion is inevitable, that it was the duty of the defendants to have assessed the shares of stock in all of the banks at their true value instead of their par value, and that all of the assessments are unauthorized and erroneous where the actual value of the stock is above par.

It is urged, however, that the relators cannot complain, because upon their own statements they have not been injured, as the shares of the National Albany Exchange Bank, in which

* 1 R. S., 393, § 18.

† 13 U. S. Statutes at Large, 104, § 16; 105, § 21; 112, § 41; Van Allen v. The Assessors, 3 Wall., 573.

they are stockholders, have only been assessed at their par value, whereas their real value, as claimed by the relators themselves, is fifty-two per 'cent more than par; so that their assessments would be increased, on a reassessment of their property pursuant to the statute.    But this objection ignores another very important fact, to wit, that the shares of the relators are nevertheless worth only about forty-one per cent of the actual value of the shares of the Mechanics and Farmers' Bank, which are also assessed only at their par value.    It thus appears that as between the two banks, the shares of the former are assessed at the same valuation as the latter, whereas if the correct standard had been followed, the assessment of the former would have been fifty-nine per cent lower than the shares of the latter bank.    It also appears from the reports of the officers of the Mechanics and Farmers' Bank, annexed to the return, that the amount of surplus and undivided profits in the bank, which escapes taxation, under the method of valuation adopted by the board of assessors, is over $750,000.    The result is apparent, that the amount of tax assessed against all the other taxable property included in the assessment roll must necesarily be increased.    All of the tax-payers including the relators may therefore be injured by the erroneous assessment made against the shareholders in the Mechanics and Farmers' Bank.    In the language of Grover, J., in the case of The People ex rel. Marsh v. Delaney,* " the grievance does not consist in a violation of law, in consequence of which the assessment of the relators' property is larger than it should have been, but in a violation whereby the capital stock of the defendant's corporation has been assessed at a sum less than it should have been, thereby increasing the ratio of taxation upon the property of the relators to some extent, and also upon the property of every tax-payer in the city."

We have endeavored to find some practicable legal remedy to correct these serious irregularities.    The relators ask to have their assessment reduced to forty-one per cent of the assessment upon a corresponding number of shares of the Mechanics and Farmers' Bank, or if that be held inadmissible, a reassessment on the shares of both banks, based upon their actual value.    Both of the remedies proposed are as bad as the disease, and the adop-

* 49 N. Y., 655; opinion not reported.

tion of either would necessarily result in a violation of the statute. We cannot redress one wrong by the perpetration of another, under the forms of law, equally flagrant and indefensible. It does not follow because the shares of a particular bank severally representing a par value of $100, were actually worth in the market over $350; that all other bank stock in the ward except the relators' was also of the same value; and that the relators are therefore entitled to have their assessments reduced to the same proportionate valuation. In all the cases cited on the argument, where the court, on a *certiorari*, made an order reducing the assessment of the relator to a definite amount, the facts fully appeared in the return, so that upon a comparison of his assessment with all the others on the roll, according to the true standard of valuation, the precise extent of the injury could be ascertained. But in this case the return does not contain these essential facts, and we have no means of determining, even from annexed exhibits, the real value of the stock of any of the banks except the relators' and the one selected as the subject of their complaint. It is quite possible that the shares of stock thus selected and presented to the court, are of much higher value than those of any other bank in the city, and indeed that the shares of all the other banks are of far less value than those of the relators. However this may be, the relators should have procured a return, setting forth the real value of all the bank stock worth more than par in the city, or at least in the sixth ward, if they desired an order requiring the assessors to make a specific reduction of their assessment. The other alternative suggested by the relators, of directing a reassessment by the assessors upon the shares of both banks, on the basis of their actual value, is equally untenable. If any reassessment were ordered, it should include all the bank stock, worth more than par, in the ward if not in the city, and this relief we would readily grant if it could be made effectual. But an insuperable difficulty is presented, from the fact that none of the assessments against shareholders in the banks, can now be increased, and a reassessment therefore upon the only feasible basis, according to the rate of valuation of the shares of the highest value appearing on the assessment roll, would require a readjustment of all the property on the roll, which at this late day is

quite impracticable. Besides, it would involve the same violation of the statute under the sanction of the court, of which complaint is now made, as it would require a reassessment of all the taxable property at less than one-third of its real value. The writ of *certiorari* in cases of this character, does not issue *ex debito justitiæ*, but in the sound discretion of the court upon special cause shown, and when issued, will be superseded if the remedy sought be inconsistent with the interests of public justice and convenience.* We are constrained, in view of all the difficulties suggested, and the public embarrassments which would ensue from an interference at this time with the assessments, to supersede the writ, and the motion to quash must therefore be granted without costs.

Present — BOCKES, LANDON and COUNTRYMAN, JJ.

Writ quashed, without costs.

---

*People v. Supervisors of Allegany, 15 Wend., 198 ; People ex rel. Marsh v. Delaney, 49 N. Y., 655.